MJP/FMC/PAL/2020R01341

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Renee M. Bumb |
| | : | |
| v. | : | Crim. No. 24- 674 |
| | : | |
| ALI HASSANEIN | : | **COUNT ONE** |
| | : | 18 U.S.C. § 371 |
| | : | (Conspiracy to Cause a Financial |
| | : | Institution to File False CTRs) |
| | : | |
| | : | **COUNT TWO** |
| | : | 18 U.S.C. §§ 1960(a) and (b) |
| | : | 18 U.S.C. § 2 |
| | : | (Operation of an Unlicensed |
| | : | Money Transmitting Business) |

# I N F O R M A T I O N

The defendant having waived in open court prosecution by Indictment, the United States Attorney for the District of New Jersey charges:

**COUNT ONE**
(Conspiracy to Cause a Financial Institution to File False CTRs)

**Relevant Entities and Individuals**

1. At all times relevant to this Information:

    a. Defendant ALI HASSANEIN ("HASSANEIN") was a resident of Kearny, New Jersey.

    b. Galaxia International Services Inc. ("Galaxia") was a New Jersey corporation and was owned and operated by HASSANEIN. Galaxia was licensed by the State of New Jersey to operate a check cashing business in East Orange, New Jersey (the "East Orange Location") and an international money transmitting

business in Jersey City, New Jersey ("Jersey City Location-1"). Galaxia also used a third location in Jersey City, New Jersey ("Jersey City Location-2"), which was not licensed to conduct check cashing or money transmitting services, for certain relevant activities.

   c. "Co-Conspirator-1," not charged in this Information, lived in Kearny, New Jersey.

### Background on the Bank Secrecy Act

   d. The Bank Secrecy Act ("BSA"), codified at Title 31, United States Code, Sections 5311, *et seq.*, and relevant regulations impose various requirements on financial institutions. Financial institutions include, among other things, money services businesses. *See* 31 C.F.R. § 1010.100(t). Money services businesses include, among other types of entities, check cashing establishments. *See* 31 C.F.R. § 1010.100(ff)(2). A check casher is a person who accepts the currency, or other monetary instruments, funds, or other instruments denominated in the currency, of one or more countries in exchange for the currency, or other monetary instruments, funds, or other instruments denominated in the currency, of one or more other countries in an amount greater than $1,000 for any other person on any day in one or more transactions, whether or not for same-day delivery.

   e. Under the Bank Secrecy Act, check cashers and other financial institutions must file Currency Transaction Reports ("CTRs") with the Department of the Treasury for any transaction involving more than $10,000 in currency. *See* 31 U.S.C. § 5313(a).

f.   Under the Bank Secrecy Act and relevant regulations, check cashers and other financial institutions are required to treat multiple currency transactions as a single transaction and file a CTR if the financial institution had knowledge that the multiple transactions were by or on behalf of any person and resulted in either cash in or cash out totaling more than $10,000 during any one business day.  *See* 31 CFR § 1010.313(b).

g.   Each CTR consists of three parts.  *See* FinCEN Form 104.  Part I requires the financial institution to verify and accurately record the name, address, and social security number or taxpayer identification number of the person who conducted a reportable transaction, as well as on whose behalf the transaction is conducted.  There are also requirements to identify if the transaction amends a prior report, involves multiple persons, or involves multiple transactions.  Part II requires the financial institution to record the date, the amount of the transaction, and the form of the transaction.  Part III requires the financial institution to record the name and location of the financial institution where the transaction occurred, the person completing the CTR, and the person approving the completion and filing of the CTR.

## The Conspiracy

2.   From in or around 2019, through in or around February 2023, in Hudson and Essex Counties, in the District of New Jersey and elsewhere, the defendant,

ALI HASSANEIN,

did knowingly and intentionally conspire and agree with Co-Conspirator-1 and others to knowingly, and for the purpose of evading the reporting requirements of Title 31,

3

United States Code, Section 5313(a) and the regulations promulgated thereunder, cause a domestic financial institution to file a report required by Title 31, United States Code, Section 5313(a), specifically a CTR, that contained material omissions and misstatements of fact concerning, among other things, the true identities of the parties involved in financial transactions and the locations at which financial transactions occurred, as part of a pattern of illegal activity involving more than $100,000 in a twelve-month period, contrary to Title 31, United States Code, Sections 5324(a)(2) and 5324(d)(2).

## Goal of the Conspiracy

3. The goal of the conspiracy was for the HASSANEIN, Co-Conspirator-1, and their co-conspirators to cause Galaxia, a financial institution, to file CTRs that contained material omissions and misstatements of fact, including the true identities of the parties involved in financial transactions and the locations at which financial transactions occurred, to enrich themselves by earning commissions as part of, and to prevent law enforcement discovery of, the unlicensed money transmitting activities charged in Count One of the Information.

## Manner and Means of the Conspiracy

4. It was part of the conspiracy that:

    a. Co-Conspirator-1 and other co-conspirators operated an unlicensed money transmitting business, which charged third parties a fee to cash checks.

4

b. Co-Conspirator-1 and others used HASSANEIN and Galaxia to cash checks in furtherance of their unlicensed money transmitting activities.

c. Co-Conspirator-1 and others compensated HASSANEIN and Galaxia for check cashing activities by paying a fee amounting to a percentage of the amount of cashed checks.

d. From in or around 2019 through in or around February 2023, Co-Conspirator-1 and others cashed more than approximately $325 million in checks at Galaxia.

e. HASSANEIN and Galaxia filed CTRs with FinCEN concerning these check cashing transactions that contained material omissions and misstatements of fact.

f. For example, all of the relevant CTRs listed Co-Conspirator-1's and their other co-conspirators' transactions as occurring at Galaxia's East Orange Location, where Galaxia was registered to cash checks. However, the East Orange Location was rarely open, and the transactions instead occurred at Galaxia's Jersey City Location-2 or at HASSANEIN's residence in Kearny, New Jersey, neither of which were licensed to cash checks and neither of which were reflected on the CTRs.

g. In addition, all of the relevant CTRs falsely listed the person or entity on each check as the individual conducting the transaction, rather than the person actually conducting the check cashing transaction, such as Co-Conspirator-1 and others. The individuals listed as the conductors on the CTRs never actually presented any transactions to HASSANEIN or Galaxia. To facilitate this scheme,

Co-Conspirator-1 and others provided HASSANEIN with scanned driver's licenses, incorporation documents, and other materials for the alleged transactors, which HASSANEIN and others at Galaxia would then use to falsely complete the CTRs.

   h. By concealing the true locations and identities of the conductors of the check cashing transactions, HASSANEIN and others caused Galaxia to file CTRs that contained material omissions and misstatements of fact.

   i. Overall, from in or around January 2019 through in or around February 2023, HASSANEIN caused Galaxia to file thousands of CTRs with FinCEN that contained material omissions and misstatements of fact, including concerning the locations and conductors of more than approximately $325 million in check cashing transactions.

## Overt Acts

 5. In furtherance of the conspiracy and to achieve its illegal objectives, HASSANEIN and his co-conspirators committed, and caused to be committed, the following overt acts:

   a. On or about April 21, 2022, HASSANEIN obtained cash from an armored car carrier at Galaxia's Jersey City Location-1 and then carried it to Galaxia's Jersey City Location-2. Shortly thereafter, HASSANEIN handed a bag containing approximately $200,000 in cash to Co-Conspirator-1 in the parking lot of Jersey City Location-2 as part of a check cashing transaction. On or about the same date, HASSANEIN caused Galaxia to file approximately four CTRs for a total of approximately $124,230, each of which falsely listed the transactions as having

occurred at the East Orange Location and as being conducted by individuals and entities other than Co-Conspirator-1.

b. On or about January 27, 2023, at a time when Galaxia's East Orange Location was closed, Co-Conspirator-1 delivered checks to be cashed to HASSANEIN's residence. On or about that same date, HASSANEIN delivered the cash to Co-Conspirator-1 at Co-Conspirator-1's place of business, after which HASSANEIN caused Galaxia to file approximately eight CTRs for a total of approximately $254,653, each of which falsely listed the transactions as having occurred at the East Orange Location and as being conducted by individuals and entities other than Co-Conspirator-1.

In violation of Title 18, United States Code, Section 371.

## COUNT TWO
(Operation of an Unlicensed Money Transmitting Business)

1. The allegations in paragraphs 1 and 3 through 5 of Count One of this Information are realleged here.

2. From in or around 2019, through in or around February 2023, in Hudson and Essex Counties, in the District of New Jersey, and elsewhere, the defendant,

ALI HASSANEIN,

knowingly conducted, controlled, managed, supervised, directed, and owned all or part of an unlicensed money transmitting business, and aided and abetted the conduct, control, management, supervision, direction, and ownership of such a money transmitting business, which business affected interstate and foreign commerce, and was a business operated without an appropriate money transmitting license in a state where such operation is punishable as a misdemeanor or a felony under state law, that is, the State of New Jersey, and was a business required to register with the Financial Crimes Enforcement Network ("FinCEN"), an agency of the United States government, pursuant to Title 31, United States Code, Section 5330.

In violation of Title 18, United State Code, Sections 1960(a), (b)(1)(A), and (b)(1)(B), and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATION AS TO COUNT ONE

1. Upon conviction of the conspiracy to cause a financial institution to file false CTRs offense, contrary to Title 31, United States Code, Sections 5324(a)(2) and 5324(d)(2), in violation of Title 18, United States Code, Section 371, alleged in Count One of this Information, the defendant, ALI HASSANEIN, shall forfeit to the United States, pursuant to Title 31, United States Code, Section 5317(c)(1), all property, real and personal, involved in the offense, and all property traceable thereto.

2. The property to be forfeited includes, but is not limited to, a sum of money representing the property involved in the conspiracy to cause a financial institution to file false CTRs offense charged in Count One of this Information, and the following property (hereinafter the "Specific Property"):

   a. Approximately $300,000 in cash seized from HASSANEIN and Galaxia in or around Jersey City, New Jersey on or about February 22, 2023; and

   b. Approximately $755,651.76 seized from a Brunswick Bank & Trust bank account ending in 0923 on or about March 2, 2023.

## FORFEITURE ALLEGATION AS TO COUNT TWO

3. Upon conviction of the operation of an unlicensed money transmitting business offense, in violation of Title 18, United States Code, Sections 1960(a), (b)(1)(A), and (b)(1)(B) and Title 18, United States Code, Section 2, alleged in Count Two of this Information, the defendant, ALI HASSANEIN, shall forfeit to the United

9

States, pursuant to 18 U.S.C. § 982(a)(1), all property, real and personal, involved in such offense, and all property traceable to such property.

   4.  The property to be forfeited includes, but is not limited to, a sum of money representing the property involved in the operation of an unlicensed money transmitting business offense charged in Count Two of this Information, and the Specific Property.

### SUBSTITUTE ASSETS PROVISION
### (Applicable to All Forfeiture Provisions)

   5.  If any of the property described above, as a result of any act or omission of the defendant:

    a) cannot be located upon the exercise of due diligence;

    b) has been transferred or sold to, or deposited with, a third party;

    c) has been placed beyond the jurisdiction of the court;

    d) has been substantially diminished in value; or

    e) has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to forfeiture

of any other property of the defendant up to the value of the forfeitable property described above.

*Philip R. Sellinger*
PHILIP R. SELLINGER
United States Attorney